IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

David Byron Allen,                          )          Civil Action No. 8:13-3477-TLW-JDA
                                            )
                        Plaintiff,          )          **REPORT AND RECOMMENDATION**
                                            )          **OF MAGISTRATE JUDGE**
            vs.                             )
                                            )
Carolyn W. Colvin,                          )
Commissioner of Social Security,            )
                                            )
                        Defendant.          )

        This matter is before the Court for a Report and Recommendation pursuant to Local

Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this

action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the

Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for

disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended

that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

        On May 27, 2010, Plaintiff filed an application for DIB, alleging an onset of disability

date of January 15, 2009.  [R. 137–45.]    The claim was denied initially and on

reconsideration by the Social Security Administration ("the Administration").  [R. 74, 83–87,

94–96.]  Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on

_____

[1]A Report and Recommendation is being filed in this case, in which one or both parties
declined to consent to disposition by a magistrate judge.

June 21, 2012, ALJ Walter C. Herin, Jr., conducted a de novo hearing on Plaintiff's claim. [R. 31–72.]

The ALJ issued a decision on August 3, 2012, finding Plaintiff not disabled. [R. 9–30.] At Step 1,[2] the ALJ found Plaintiff last met the insured status requirements of the Social Security Act ("the Act") on December 31, 2012, and had not engaged in substantial gainful activity during the period from his alleged onset date of January 15, 2009. [R. 14, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, cervical and lumbar spine, with radiculopathy; and anxiety disorder secondary to general medical condition. [R. 14, Finding 3.] The ALJ also found Plaintiff had the following non-severe impairments: mild left ventricular diastolic function; intermittent migraine headaches; and, depression/anxiety related disorder. [R. 17–18.] At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 18, Finding 4.] The ALJ specifically considered Listings 1.04 and 12.06. [R. 18–19.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except no lifting or carrying over ten pounds occasionly and less than ten pounds frequently. He can perform no standing or walking over an aggregate of two hours in of an eight-hour workday. He can do no more than occasional stooping, twisting,

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

> balancing, crouching, kneeling, or climbing of stairs or ramps. He can perform no crawling or climbing ropes, ladders, or scaffolds. He can have no required exposure to unprotected heights or dangerous machinery. He can have no required concentrated exposure to extremes of cold temperatures. In addition, the claimant is limited to simple, routine tasks that do not require ongoing interaction with the general-public.

[R. 19–23, Finding 5.]  Based on this RFC finding, the ALJ determined at Step 4 that Plaintiff could not perform his past relevant work as a crash squad investigator/investigator for a law firm, and in various computer jobs.  [R. 23, Finding 6.]  At Step 5, however, based on his age, education, work experience, RFC, and the testimony of a vocational expert ("VE"), there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  [R. 24, Finding 10.]  On this basis, the ALJ found Plaintiff had not been under a disability as defined by the Act from January 15, 2009, through the date of the decision.  [R. 25, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined.  [R. 1–6. ]  Plaintiff filed this action for judicial review on December 13, 2013. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and that remand is necessary for the following reasons:

1. The ALJ failed to ascertain whether the testimony of the VE was consistent with the *Dictionary of Occupational Titles* ("DOT") [Doc. 11 at 9–10 ];

2. The ALJ failed to properly explain his reason for giving little weight to Dr. Brian Lecher's ("Dr. Lecher's") opinion regarding Plaintiff's reaching, handling and fingering limitations [*id.* at 11–13]; and,

> 3.    The ALJ failed to properly evaluate Plaintiff's pain complaints [*id.* at 13–15].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that

> 1.    Substantial evidence supports the ALJ's Step 5 finding, and the ALJ properly relied on the VE's testimony [Doc. 13 at 11–14];

> 2.    The ALJ properly considered Dr. Lecher's opinion on Plaintiff's limitations on reaching and grasping [*id.* at 8–11], and

> 3.    The ALJ adequately considered Plaintiff's pain complaints [*id.* at 6–8].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the

[Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

5

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

6

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

8

the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical

9

and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B).

## C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

## D.     *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the

10

claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

###    E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).    To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).    When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 404.1569a(c)(1).

other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527©.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming

13

down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.   Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.   Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain,

14

the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.*

15

*Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the

following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485;

*see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.     Credibility

16

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## **APPLICATION AND ANALYSIS**

As noted above, Plaintiff contends the ALJ made three errors: he failed to ask the VE whether his testimony was consistent with the DOT, and conflicts existed which rendered the VE testimony incorrect; he failed to properly weigh Dr. Lecher's opinion with respect to Plaintiff's limitations on use of hands to occasional handling, fingering, and feeling and restrictions on use of the left hand; and, he failed to properly weigh Plaintiff's complaints of pain. The Commissioner argues that the ALJ applied the correct legal standards, properly weighed and considered the evidence, and substantial evidence supports his decision. This Court agrees with the Commissioner.

### **Weighing of Dr. Lecher's Opinion**

In his apparent effort to contend that the RFC determination was incorrect, Plaintiff argues the ALJ's decision "focused narrowly on the Plaintiff's limitations with sitting,

17

standing, and walking...", but "never addresses Plaintiff's reaching, handling, and fingering limitations [which are] actually supported by grip testing." [Doc. 11 at 4.]  Plaintiff argues the ALJ's decision provides no reasons for rejection of Dr. Lecher's opinion regarding reaching, fingering, and handling limitations.  [*Id.* at 5.]  The Commissioner, on the other hand, contends the ALJ properly gave Dr. Lecher's opinion limited weight because it was not well-supported; thus, the RFC determination was correct.  [Doc. 13 at 9, 11.]

### *Dr. Lecher's Opinion*

Plaintiff presented to Dr. Lecher one time on May 17, 2012, for a comprehensive orthopedic evaluation. [R. 776.] Dr. Lecher's notes indicated Plaintiff came with complaints of a three-year history of neck, mid thoracic and lower back pain that started "out of the blue and got progressively worse" and a history of significant hypertension, anxiety, nerve disorder and spinal stenosis.  [*Id.*] Dr. Lecher noted that an MRI of Plaintiff's neck, thoracic and lumbar area showed moderate-to-severe spinal stenosis throughout the entire spine area with osteoarthritic degenerative changes.  [*Id.*]

On exam, Dr. Lecher found Plaintiff's range of motion examination was severely limited in the cervical and lumbar spine; his shoulders were bilaterally normal; wrists had normal dorsiflexion; ankles were normal; and he had positive straight leg raises bilaterally. [R. 777.]  Dr. Lecher also found Plaintiff's hands had no joint deformity, no joint swelling, no decreased range of motion, and no tenderness.  [*Id.*]  His grip strength on the left was 3/5 as compared to the right; and, he was able to do both fine and gross motor manipulation.  [*Id.*]  Plaintiff was able to ambulate in the office without difficulty, was able to heel and toe walk with discomfort, was able to squat, and was able to bend at the waist to approximately 60 degrees.  [*Id.*]  Dr. Lecher also noted no sensory loss, no joint

18

abnormalities, normal reflexes, and no muscle atrophy.  [*Id.*]  On neurological exam, Plaintiff's cranial nerves II through XII were found grossly intact; station was normal, speech clear, and tongue midline.  [*Id.*]  On psychiatric exam, Plaintiff was found anxious and tremulous, but alert and oriented.  [*Id.*]  Dr. Lecher assessed Plaintiff with severe spinal stenosis, cervical, thoracic and lumbar, with failed conservative management.  [R. 778.] Dr. Lechner noted Plaintiff was not a surgical candidate and that, due to these problems, he would have a hard time being employed.  [*Id.*]  Dr. Lecher also assessed Plaintiff with anxiety disorder related to his severe spinal stenosis and hypertension related to severe spinal stenosis.  [*Id.*]

Also, on May 17, 2012, Dr. Lecher completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) and found as follows:

* Plaintiff can occasionally lift/carry up to 10 pounds, but never more

* Plaintiff can sit for 30 minutes in an 8-hour day; stand for 30 minutes in an 8-hour day; and walk for 15 minutes in an 8-hour day

* Plaintiff does not require the use of a cane of ambulate

* Plaintiff can occasionally reach, handle, finger, feel, and push/pull with his right and left hands, with his right hand being his dominate hand

* Plaintiff can occasionally use his right and left feet to operate foot controls

* Plaintiff can occasionally climb stairs and ramps, but can never climb ladders or scaffolds, balance, stoop, kneel, crouch or crawl

* Plaintiff's impairments do not affect his hearing or vision

* Plaintiff can occasionally tolerate exposure to moving mechanical parts, operating a motor vehicle, humidity and wetness, and dust, odors, fumes and pulmonary irritants; but can never tolerate exposure to unprotected heights, extreme cold, extreme heat or vibrations

     \*     Plaintiff requires library-quiet conditions

     \*     Plaintiff can shop; travel without companion for assistance; walk a block on rough or uneven surfaces at a reasonable pace; prepare simple meals and feed himself; care for his personal hygiene; and can sort, handle and use paper/files.

[*See* R. 779–84.]  Dr. Lecher noted these limitations will last or have lasted for twelve (12) consecutive months. [R. 784.]

### *ALJ's Consideration of Dr. Lecher's Opinion*

Upon considering Dr. Lecher's report, the ALJ gave limited weight to his assessment of Plaintiff's abilities.  The ALJ explained as follows:

> the record reflects overall conservative treatment.  The claimant has not had any emergency room care for his back/neck.  Nor has he had extended hospital stay or surgery.  This assessment includes noise and clean-air restrictions, but the record, including this examiner's own report, does not support such.  The suggested limitations are similarly not entirely consistent with the claimant's testimony at hearing.  Further, this report is not supported by objective testing (22F).  It appears based primarily on the claimant's subjective complaints.  I place more weight on the claimant's treatment records, including the treatment notes from Dr. Steichen at 12F (discussed in detail above).

[R. 16.]  When specifically discussing the RFC determination, the ALJ explained that he considered all reports of medical sources set forth in Section F, which included Dr. Lecher's report. [R. 23, 28–30.]  The ALJ explained that two reports of Plaintiff's Physical RFC Assessment—dated September of 2010 and April of 2011—supported his finding that Plaintiff could perform sedentary work with certain limitations as set forth in the RFC. [R. 23.]  Upon review of those two Physical RFC Assessments, neither Dr. Elva Stinson ("Dr. Stinson") nor Dr. Matthew Fox ("Dr. Fox") found any limitations on Plaintiff's ability to handle, finger and feel and to reach in all directions.  [R. 638, 761.]  In other words, upon

considering the medical reports set forth in Section F, the ALJ decided to give more weight to certain reports that did not assign any manipulative limitations to Plaintiff than he gave to Dr. Lecher's report.

### *Discussion*

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (*quoting Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527©.

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the

21

> opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996).  However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions.  In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work.  Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner.  Such opinions on these issues must not be disregarded.  However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity).

Upon review, the Court notes the ALJ found Plaintiff capable of sedentary work with come additional postural limitations.  [R. 19.]  Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.  SSR 83-10.  Dr. Lecher opined that Plaintiff can occasionally reach, handle, finger, feel, push/pull with his right and left hands, but failed to identify on the form any particular medical or clinical findings to support the limitations of occasionally.  [R. 781]  Additionally, Dr. Lecher found that Plaintiff

was able to do both fine and gross motor manipulation. [R. 777.] And, while Plaintiff takes issue with the ALJ's failure to adopt Dr. Lecher's opinion regarding limitations in fingering, handling and reaching, Plaintiff failed to point to evidence of record showing limitations in fingering, handling and reaching which would prevent him from doing the limited sedentary work defined in the RFC.

For instance, other medical evidence of record includes a neurosurgical consultation in December 2010 by Dr. John D. Steichen ("Dr. Steichen") noting that the results of his physical examination were rather unremarkable; Plaintiff's neck and dorsal/lumbar spine showed full range of motion; his extremities were benign; his neurological findings were within normal limits; his motor exam showed full strength throughout with normal tone and bulk; his sensory results were grossly intact; and the MRI of the cervical spine showed only mild degenerative changes. [R. 665–67.] Surgery was not recommended. [*Id.*] A further consultation with Sabino D'Agostino, D.O., in November 2011 showed normal muscle bulk and tone in Plaintiff's bilateral upper and lower extremities; and 5/5 upper and lower bilateral extremity strength. [R. 855–56.] Again, surgery was not recommended. [*Id.*]

The ALJ further noted that, during a psychological consultative exam in May 2012 by James H. Way, Ph.D. ("Dr. Way"), Plaintiff indicated that he used a recumbent bicycle for exercise at times; spent his day watching television and reading via the Internet; prepared at least light meals; could grocery shop in stores; talked on the telephone to family and friends; occasionally visited his mother; continued to drive; and was capable of managing funds. [R. 16–17.] And, as noted above, Physical RFC's performed by Dr. Stinson in September 2010 and Dr. Fox in April 2011 both indicated no manipulative limitations. [R. 638, 761.]

Upon review of the ALJ's decision, the Court finds the ALJ properly evaluated Dr. Lecher's medical opinions of record in accordance with 20 C.F.R. § 404.1527. And, he properly evaluated Dr. Lecher's opinion by considering the supportability of the physician's opinion and the consistency of the opinion with the record. Further, the ALJ adequately indicated and explained the weight he assigned to the various opinions based on the medical records as a whole. Thus, the Court finds the ALJ's decision to decline to adopt Dr. Lecher's opined limitations with respect to reaching, fingering and handling is supported by substantial evidence.

**Credibility Findings Related to Pain**

Plaintiff challenges the ALJ's credibility determinations as failing to comply with the two-step analysis required in this Circuit. *See Craig v. Chater*, 76 F.3d 585, 591–96 (4th Cir.1996). Plaintiff argues that the ALJ "commits the same error here as he does with respect to Dr. Lecher's opinion regarding Plaintiff's radicular symptoms that cause him to have diminished functioning to his left arm and hand." [Doc. 11 at 14.] Plaintiff argues that the ALJ's "failure to address Dr. Lecher's findings and opinion as to Plaintiff's reaching, handling, and fingering limitations is reversible error." [*Id.* at 15.] The Commissioner contends the ALJ adequately considered Plaintiff's pain allegations and found them less than fully credible. [Doc. 13 at 6–7.] The Commissioner also argues that Plaintiff's treatment is conservative and may be considered inconsistent with disability. [*Id.* at 8.]

### *ALJ's Credibility Determination*

At step one of the credibility analysis, the ALJ confirmed the presence of objective medical evidence showing the existence of medical impairments which could reasonably be expected to produce the pain or other symptoms alleged by Plaintiff. [R. 21.] Upon

24

making his step one findings, the ALJ moved on to his step two analysis finding that, while

Plaintiff's medically determinable impairments could reasonably be expected to cause at

least some of the alleged symptoms, Plaintiff's statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely credible. [*Id.*] The ALJ

explained as follows:

> I also evaluated the claimant's credibility. The claimant's
> allegations of symptoms, to the extent inconsistent with the
> residual functional capacity herein, are not otherwise supported
> by objective medical evidence (Section F). The claimant
> reported the ability to do daily activities, at times, somewhat
> inconsistently with his allegations of inability to work, as
> discussed above. The claimant has had overall conservative
> treatment for any condition (Section F). He is currently taking
> no prescribed medication for pain, which I find inconsistent with
> his allegations of debilitating pain. He testified that he currently
> takes only over-the-counter medication for any physical
> complaints and is prescribed psychotropic medications. He did
> not testify to any current side effects. While the claimant
> reported side effects from previously prescribed pain
> medication, he also indicated that he stopped pain
> management when he could no longer afford health insurance.
> Yet, he has not sought treatment at emergency rooms or
> sliding fee clinics. The claimant has reported some anxiety,
> but testified to some benefit from his prescribed psychotropic
> medications. The claimant stated that he last worked in 2007,
> but stated that he was laid-off from this job, as opposed to
> either emotional or physical inability in performing his work.
> Further, he received unemployment benefits until sometime in
> 2010. The acceptance of unemployment insurance benefits
> does not preclude a finding of disability due to disqualifying
> substantial gainful activity. However, eligibility for
> unemployment benefits requires the claimant to certify being
> able and available for work. Thus, the acceptance of such
> benefits appears somewhat inconsistent with the allegation of
> total disability, which was given some slight weight. Further,
> the claimant responded to questions with no outward indication
> of distraction due to any cause. The foregoing does not bolster
> his credibility.

[R. 22–23.]

### *Discussion*

The determination of whether a person is disabled by pain or other symptoms is a two-step process.   First, the ALJ must determine whether there is objective medical evidence showing the existence of a medical impairment which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. *Craig*, 76 F.3d at 593, 595.  Only after Plaintiff makes this threshold showing is the ALJ obligated to evaluate the intensity and persistence of Plaintiff's pain and the extent to which it affects his ability to work.   *Id.*   The ALJ is required to make credibility determinations about allegations of pain or other nonexertional disabilities, and "such decisions must refer specifically to the evidence informing the ALJ's conclusions."   *Hammond,* 765 F.2d at 426.   "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  SSR 96-7p, 61 Fed. Reg. 34,483-01, 34,485 (July 2, 1996); *see also* 20 C.F.R. § 416.929(c)(1)–(c)(2).   If he rejects a claimant's testimony about her pain or physical condition, the ALJ must explain the basis for such rejection to ensure the decision is sufficiently supported by substantial evidence.   *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)).   "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p.

When considering whether an ALJ's credibility determinations are supported by substantial evidence, the court does not simply replace its own credibility assessments for those of the ALJ.  Rather, the court must scrutinize the evidence to determine if it is sufficient to support the ALJ's conclusions.  In reviewing the record for substantial evidence, the court does not re-weigh conflicting evidence, reach independent determinations as to credibility, or substitute its own judgment for that of the Commissioner. *Hays*, 907 F.2d at 1456.  Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."  *Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir.1984) (citing *Tyler v. Weinberger*, 409 F.Supp. 776 (E.D.Va.1976)).

Here, Plaintiff contends the ALJ failed to properly weigh Plaintiff's complaints of pain and the ALJ's decision is not supported by substantial evidence because he failed to make specific reference to functional limitations with respect to Plaintiff's ability to only occasionally reach, handle and finger due to radicular symptoms which cause him to have diminished functioning to his left arm and hand.  [Doc. 11 at 14.]  Plaintiff testified that he experiences pain in his left arm and that he does not have proper grip in his left arm as compared to his right.  [R. 47.] He also testified that his chiropractor restricted his lifting to 10 pounds and that he can lift no more than 10 pounds with his left hand.  [R. 51.]  Plaintiff further explained that he is limited to lifting 10 pounds with both hands; less than 10 with the left and 10 pounds with the right. [R. 51–52.]

As discussed above, the ALJ, however, did not find Plaintiff limited in his ability to reach, handle and finger beyond that required for sedentary work, and Plaintiff failed to point to any evidence of record indicating that Plaintiff is so limited.  The ALJ noted that no

27

treating physician placed either physical or emotional restrictions on Plaintiff. [R. 21.] The ALJ also cited Dr. Lecher's opinion which found Plaintiff had grip strength of 3/5 in his left hand compared to his right but also found Plaintiff could do fine and gross motor manipulations. [R. 15.] Medical records from October 2011, however, show Plaintiff's strength in this left hand only mildly decreased at 4/5. [R. 879.] Additionally, treatment notes indicated examination of Plaintiff's upper extremities was generally normal. [*See* R. 249, 302, 652 (normal range of motion, no edema, cyanosis, clubbing); R. 287, 321 (normal range of motion); R. 344, 345 (no focal weakness or sensory impairment on extremities); R. 369 (wrist/hand: intact neuro-vascular bundle bilateral; negative Tinnel and Phalen tests; sensation in left hand normal to light touch pinprick); R. 372 (all extremities normal); R. 375, 382, 385, 833 (strength all extremities normal); R. 721, 849 (good strength bilaterally and no deformities on musculoskeletal exam); R. 855(normal muscle bulk and tone in the upper and lower extremities; upper extremity exam reveals 5/5 strength and intact to light touch and normal triceps, biceps and brachioradialis reflexes); *c.f.* R. 699 (muscle weakness on musculoskeletal exam but strength in extremities normal); R. 777 (hands bilaterally tremulous; no joint deformity; no swelling, no decreased range of motion; no tenderness, grip strength on the left is 3/5 compared to right; able to do fine and gross motor manipulation).]

Upon consideration, the undersigned concludes the ALJ conducted the proper credibility analysis under the Social Security Rules and cited substantial evidence to support his finding that Plaintiff's subjective complaints were not entirely credible. The ALJ explained the correct legal standard for evaluating subjective complaints of pain in great detail; recognized and conducted the two-step analysis; and clearly articulated the correct

legal lens through which to view Plaintiff's subjective complaints of pain. [See R. 19–23.] After discussing Plaintiff's medical history and his activities of daily living, the ALJ concluded that Plaintiff's allegations of limitations due to pain were not entirely credible based on his relatively conservative treatment history. Additionally, the ALJ noted Plaintiff obtained unemployment benefits by certifying his ability to work which weighs against his claim of disability. Accordingly, the Court finds the ALJ's credibility analysis is supported by substantial evidence.

### Consistency of VE Testimony with DOT

Plaintiff contends the ALJ failed to address conflicts between the VE's testimony and the DOT, such as the fact that the DOT does not address issues related to interaction with the general public, the fact that the occupation of addresser as performed today is very different than the occupation was performed 20 years ago when the DOT was written, and the fact that the occupation of document preparer requires the use of a knife which can be considered dangerous machinery. [Doc. 11 at 10.] According to Plaintiff, "[t]hese inconsistencies require explanation by the [VE] before the ALJ could find that the testimony was consistent to satisfy SSR 00-4p." [*Id.*] The Commissioner contends the ALJ properly relied on the VE's testimony because his testimony was not in conflict with the DOT. [Doc. 13 at 12–13.]

#### *VE Testimony*

The following is the colloquy between the ALJ and VE with respect to the availability of jobs in the national economy that Plaintiff could perform:

**ALJ:**  All right, sir. Let me go to Hypothetical No. 3 again assuming, please, the presence of an individual of the approximate age, education, past

work experience as the Claimant seeking employment with the following limitations.

No lifting or carrying over 10 pounds occasionally, less than 10 pounds frequently; no standing or walking over an aggregate of two hours in an eight hour workday; no more than occasional stooping, twisting, balancing, crouching, kneeling, or climbing of stairs or ramps; no crawling; no climbing of ladders, ropes, or scaffolds; no required exposure to unprotected heights or dangerous machinery; no required concentrated exposure to extremes of cold temperatures.

Would those restrictions still allow the performance of the jobs that you listed before as envelope addresser, surveillance system monitor, and document preparer?

VE:    Yes.

[R. 69–70.]   The VE described the jobs of envelope addresser, surveillance system monitor, and document preparer as having the following requirements:

VE:    Okay. It's envelope addresser, and the DOT title is 209.587-010. It's classified as sedentary and unskilled, with an SVP of 2. Just hold on. The regional estimate is for the Columbia, South Carolina metropolitan area, which is comprised of Calhoun, Deerfield, Kershaw, Lexington, Richland, and Saluda Counties, and the regional estimate is approximately 130. Just hold on a moment.
. . .

A third example is going to be that of a surveillance system monitor at DOT No. 379.367-010, classified as sedentary and unskilled, with an SVP of 2, with a national estimate of in excess of 92,000 and a regional estimate of approximately 120.
. . .

Just hold on a moment. Okay. A document preparer at DOT No. 249.587-010, classified as sedentary and unskilled, with an SVP, for a national estimate in excess of 3.1 million and a regional estimate of 8,040. That's 8-0-4-0.

[R. 68–69.]

***Discussion***

Occupational evidence provided by a VE generally should be consistent with that in the DOT.   But the Commissioner has acknowledged, in Ruling 00–4p, 65 Fed.Reg. 75,759–01, that neither the DOT nor the VE's testimony "automatically 'trumps' when there is a conflict." *Id.* at 75,760.   "[I]nstead, the ALJ is obligated to resolve the conflict by deciding if the [VE]'s explanation for the conflict is reasonable." *Fisher v. Barnhart*, 181 Fed. App'x 359, 365 (4th Cir. 2006).

SSR 00–4p provides that:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p.  Thus, pursuant to SSR 00–4p, before relying on VE evidence to support a disability decision, the ALJ has an affirmative responsibility to ask about any possible conflict between the VE testimony and the information provided in the DOT. SSR 00–4p.

Upon review of the colloquy between the ALJ and the VE, the Court notes that at no time did the ALJ confirm with the VE the consistency of his testimony with the DOT.  [*See* R. 57–70.]  Thus, the ALJ did not comply with the directive of SSR 00–4p to ask the VE whether his testimony conflicted with the DOT.  In certain instances, however, an ALJ's failure to comply with SSR 00–4p may be harmless error.  *See, e.g., Renfrow v. Astrue*,

496 F.3d 918, 921 (8th Cir. 2007) (holding the ALJ's failure to ask about conflict between the VE testimony and DOT was harmless error because no conflict existed). In this case, the Court finds the ALJ's error to be harmless.

As an initial matter, any conflict between the VE's testimony and the DOT must be apparent. The Fourth Circuit has held that SSR 00-4p does not require an ALJ to uncover conflicts between the VE's testimony and DOT evidence, but rather requires the ALJ to inquire only if apparent conflicts exist between a VE's testimony and the DOT and to resolve such discrepancies. *See Justin v. Massanari*, 20 F. App'x 158, 160 (4th Cir. 2001). In this case, at the hearing Plaintiff's attorney failed to raise any objection to the VE's testimony and did not identify any discrepancies between the VE's testimony and the DOT. Plaintiff now claims that the apparent conflicts include "the fact that the DOT does not address issues related to interaction with the general public, the fact that the occupation of addresser as preformed today is very different than the occupation was performed 20 years ago when the DOT was written, and the fact that the occupation of document preparer requires the use of a knife which can be considered dangerous machinery." [Doc. 11 at 10.] Plaintiff, however, provides no legal basis for finding such conflicts; he does not cite any particular DOT description, or quote any language therefrom, inconsistent with the VE testimony. And, contrary to Plaintiff's argument, courts in this district have held that, although the DOT does not address whether a job requires ongoing interaction with the public, this does not create an apparent unresolved conflict between a VE's testimony and the DOT. *See Bilodeau v. Colvin*, No. 2:12-1298-CMC-BHH, 2013 WL 3880132, at *6 (D.S.C. July 26, 2013) (finding that where the plaintiff conceded the DOT did not address limitations in public interaction, there was no apparent conflict with the VE testimony).

32

Furthermore, while Plaintiff takes issue with the age of the DOT, the provisions of 20 C.F.R. §§ 404.1566(d) and 416.966(d) provide that the ALJ should take administrative notice of job information contained in the DOT and SSR 00–4p indicates that "we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy." Thus, the ALJ's reliance on the DOT, regardless of its age, cannot be error.

Moreover, courts have held that a restriction from "dangerous machinery" is distinct from a restriction from knives. *See Connor v. Astrue*, C/A No. 4:10-2905-TER, 2012 WL 715062, at *1 (D.S.C. March 1, 2012) (affirming the Commissioner where the RFC distinguished hazards and sharp moving edges with kitchen knives considered to be more simple objects); *Garcia v. Astrue*, No. 12-1030-JWL, 2012 WL 6159972, at *3 (D. Kan. Dec. 11, 2012) (affirming where ALJ assessed knife restriction separately from dangerous machinery restriction). Accordingly, based on the above, the Court finds there was no apparent conflict between the VE's testimony and the DOT.

Lastly, the ALJ found Plaintiff capable of performing work as a surveillance system monitor—to which Plaintiff raised no objection. Because Plaintiff was found to have the ability to adjust to other work as a surveillance system monitor, the Commissioner properly found him not disabled. *See* 20 C.F.R. § 404.1520(g)(2). Thus, even if the ALJ erred by failing to ask the VE if his testimony was consistent with the DOT and assuming the VE should have testified further about the document preparer and addresser jobs, the error was harmless. Remand to determine the existence of conflicts between the DOT and the VE's testimony with respect to Plaintiff's ability to work as an addresser or document preparer would not change the outcome of the ALJ's decision.

33

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.


March 25      , 2015                    s/Jacquelyn D. Austin
Greenville, South Carolina           United States Magistrate Judge